IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2011

**ANDREW SOIMIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Putnam County**
**No. 04-0592      Leon C. Burns, Jr., Judge**

**No. M2010-01002-CCA-R3-PC - Filed June 29, 2011**

The petitioner, Andrew Soimis, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

A.F. Officer, Cookeville, Tennessee, for the appellant, Andrew Soimis.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; General; Randall A. York, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In July 2005, the petitioner was convicted by a Putnam County Criminal Court jury of the second degree murder of David Duncker and sentenced by the trial court as a Range I offender to twenty-nine years in the Department of Correction. His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Andrew Soimis, No. M2005-02524-CCA-R3-CD, 2007 WL 416380, at *1 (Tenn. Crim. App. Feb. 8, 2007), perm. to appeal denied (Tenn. June 18, 2007).

Our direct appeal opinion reveals that the petitioner's conviction was based on his having shot and killed the victim, who lived in the same trailer park as the petitioner and who had recently stolen some of the petitioner's cocaine, as the men were fishing together in a rural area of Putnam County.  Id.  The State's main witness at trial was an eyewitness to the shooting, Steven Hollars, who shared a house trailer with the victim, participated with the victim in the theft of the defendant's cocaine, and accompanied the defendant and the victim on the fishing trip.  Id.

The petitioner filed a timely *pro se* petition for post-conviction relief on February 28, 2008, in which he raised a claim of ineffective assistance of counsel.  Specifically, he alleged that his trial counsel was ineffective for failing to call two witnesses who could have discredited the State's star witness and for failing to request a jury instruction on accomplice testimony or to raise the issue of the omitted instruction as an issue in the direct appeal.

Post-conviction counsel was subsequently appointed and an evidentiary hearing held on April 26, 2010.  At the hearing, the petitioner testified that he told trial counsel about two individuals, Wayne Garrett and Steve Flanigan, whose testimony could have damaged the credibility of the State's star witness.  According to the petitioner, Flanigan could have testified that Steve Hollars had pointed a gun at him as he was looking out the window of his sister's trailer, while Garrett could have testified that he and Hollars used to steal cars together until they had a "falling-out."  He said that Garrett could have further testified that Hollars had shot a gun into the air at his grandmother's house and beaten his father so badly that he had to be hospitalized.  The petitioner stated that he did not know whether counsel interviewed either man or even investigated the allegations.

The petitioner testified that he believed he was convicted based solely on the testimony of Hollars, who was dating the victim's sister at the time of the murder and shared a house trailer with the victim and his sister.  He said that although testimony was brought out at trial that Hollars had been beating the victim's sister and that the victim wanted his sister to leave Hollars, counsel failed to explore the petitioner's account of how Hollars had told him he was "going to get the MF," referring to the victim, because the victim and his sister had smoked some marijuana that Hollars had purchased from the petitioner.

The petitioner testified that the trial court denied counsel's request for a jury instruction on accomplice testimony.  He recalled, however, that counsel made no argument for an accomplice instruction and said to the judge immediately after his ruling that he had been about to withdraw the request anyway.  He testified that, in addition to not arguing for an instruction that Hollars should be considered an accomplice, counsel also failed to argue for an instruction that the jury could determine for itself whether Hollars was an accomplice. The petitioner believed that the evidence was at least equivocal on whether Hollars was an

accomplice and that counsel therefore should have requested the instruction. He said that counsel also failed to raise the issue in the direct appeal.

On cross-examination, the petitioner testified that counsel met with him approximately eight times prior to trial, in meetings that lasted about twenty minutes each time. In addition, counsel's investigator met with him on at least two occasions when counsel was not present. The petitioner acknowledged that counsel presented defense witnesses who testified that his vehicle had not left the trailer park on the day of the killing. He further acknowledged that counsel was able to elicit testimony, through his cross-examination of State's witnesses, about Hollars' criminal history and the problems he had been having with the victim over the stolen drugs and Hollars' treatment of the victim's sister.

Trial counsel, who estimated that he had handled approximately twenty first degree murder cases, including three death penalty cases, during his twenty-year legal career, agreed that he met with the petitioner approximately eight times prior to trial. He said that his investigator accompanied him to some of those meetings and additionally met with the petitioner alone on at least two other occasions. Trial counsel testified that he investigated and called as alibi witnesses individuals from the trailer park who testified that the petitioner's vehicle had remained at his trailer during the time of the victim's murder. He also recalled having investigated the petitioner's allegations regarding Hollars' alleged misconduct with Garrett and Flanigan. Although he could not specifically recall why he had not called the men as witnesses at trial, he believed that his decision was based on a full investigation: "And I don't recall why I didn't need them or why I didn't call them, so. But I kind of believe that, as hard as I worked on this case, if there was something out there, I would have found it and brought it to you."

Trial counsel testified that he conducted a lengthy and thorough cross-examination of Hollars and believed that he was successful in challenging his credibility and discrediting his testimony. He also said that he believed that the petitioner had a real chance of being acquitted of the charges and that, for that reason, he did not want an accomplice instruction given. He explained:

A.     I didn't want him to be an accomplice. I thought we had a chance for an acquittal. I've never been so surprised in my life.

Q.     When – when you point out that the state's witness may be an accomplice, does that . . . cause you concern that possibly the jury may be thinking he's the accomplice to who?

A.     Correct. I didn't want them to link [the petitioner] with anything to do

-3-

out there as an accomplice, and that would have been why I was withdrawing it.

Trial counsel further testified that Hollars was never charged in connection with the case. On cross-examination, he said that he presented evidence to show that Hollars had both the motive and opportunity to kill the victim, eliciting testimony about Hollars' bad relationship with the victim, the fact that he fled to Michigan after the shooting, and the numerous inconsistent stories he told about the killing. Counsel also reiterated his belief that an accomplice instruction would not have helped the petitioner's case, testifying that he believed there was some corroborative testimony from another witness about the victim's theft of the petitioner's cocaine.

The post-conviction court denied the petition at the conclusion of the hearing, issuing oral findings of fact and conclusions of law that were later incorporated into a written order. Among other things, the court noted that the petitioner failed to call either Garrett or Flanigan as witnesses at the evidentiary hearing and, thus, could not show that either of them would have added anything to his defense. The court further observed that an accomplice instruction would have contradicted the petitioner's own theory of defense, which was that he was not even present at the scene of the killing. In addition, the court noted that it found nothing in the evidence, at the time of trial, that even fairly raised the issue of whether a jury instruction on accomplice testimony was warranted, much less required one as a matter of law. The court, therefore, concluded that the petitioner failed to show either a deficiency in counsel's performance or resulting prejudice to his case.

## ANALYSIS

### I. Post-Conviction Standard of Review

The petitioner contends that the post-conviction court erred in finding that he received effective assistance of counsel. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40

S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the

ineffective assistance claim").

### III. Claims of Ineffective Assistance

The petitioner contends that counsel was ineffective for failing to call Wayne Garrett and Steve Flanigan as defense witnesses at his trial, for failing to properly investigate the law concerning accomplice testimony and to request a jury instruction on accomplice testimony, and for failing to raise the issue of accomplice testimony on direct appeal. The record, however, fully supports the findings and conclusions of the post-conviction court that the petitioner failed to meet his burden of showing either a deficiency in counsel's representation or prejudice to his case.

First, as the post-conviction court noted in its order, the petitioner failed to produce either Garrett or Flanigan as witnesses at the evidentiary hearing. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Trial counsel testified at the evidentiary hearing that he had investigated Hollars' alleged misconduct in connection with Garrett and Flanigan and believed that his decision not to call the men as witnesses was based on thorough research and trial preparation. Thus, the petitioner cannot show that counsel was deficient for not calling the men or that he was prejudiced as a result.

The petitioner also cannot show that counsel was deficient in his performance, or that he was prejudiced as a result, based on his allegations regarding the lack of a jury instruction on accomplice testimony. Trial counsel explained that he believed that requesting an instruction on accomplice testimony would hurt, rather than help, the petitioner's defense, which was based on a claim that the petitioner was not involved in any way in the killing. Moreover, the post-conviction court, which had presided over the trial, observed in its ruling that it did not think the jury instruction was warranted by the evidence or that it would have resulted in a different verdict if given, as there was "sufficient corroborative evidence to support the conviction."

### CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition

for post-conviction relief.

_____
ALAN E. GLENN, JUDGE